In this case, call for oral argument as people. This is Vandenberg. Counsel, whenever you're ready, may proceed. Thank you, Your Honor. Good morning again, Your Honors. May it please the Court. Counsel. We're here this morning on a de novo review of a matter of statutory interpretation. Section 5, 4.5-100 of the Unified Code of Corrections is the principal statute instructing our circuit courts as to when to give criminal defendants credit for time served in pretrial detention on a charge for which they have been convicted. In 2012, our legislature amended the statute, adding a provision to subsection B stating that, with certain exceptions that do not apply to the case before you, the trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration. On behalf of Defendant Appellant Autumn Vandenberg, I am before you today to support the proposition that the meaning of this passage is quite plain, that this plain meaning must be given effect by our courts, and therefore Ms. Vandenberg should be given sentencing credit for the 280 days she spent confined to her home by court order as a condition of bond, not free leave except for legal and medical purposes. I'm asking this court to uphold the prime directive of statutory interpretation, which is to give effect to the legislature's intent, recognizing that the most reliable indicator of such intent is the statutory language. I acknowledge that to do so, this court must reject the convoluted rationale adopted by a third district panel in People v. Smith upon which the state relies. However, this court should park company with Smith because the Smith court ignored that prime directive and several other canons of statutory construction in order to read the amendment right out of the statute. This was an improper judicial veto of a validly enacted legislative act. Now, in our briefing, we identified basically eight reasons why the Smith court was wrong, and I'll run through them briefly, but basically what they all trace back to is the corollary to the rule I just cited, and that is that where the language is clear and unambiguous, we will apply the statute without resort to further raids of statutory construction, quoting our Supreme Court from the Williams case this year. As far as the eight particulars, I'll kind of give you an overview, run through them, and see if the court has any questions about them. Number one, the Smith court primarily relied on case law decided prior to the 2012 amendment. Most of the cases spent discussing the Ramos and Deacham cases, which were discussing the pre-2012 amendment version of the statute, and basically the issue in both of those cases was interpreting the ambiguous sentence that's in the statute as, well, what does it mean to be in custody? But what the Smith court ignored is that when the legislature amended 100B, Section 100B, it had a completely new sentence. So we're no longer, the courts no longer have to struggle to interpret, well, what does in custody mean? The court, the legislature has now told us in a separate sentence, thou shalt give credit for thy time spent in home detention. So we no longer have to rely on an interpretation of what custody means. Point two, what the Smith court did is it basically just bypassed the plain meaning of this language in Section 100B, and it inexplicably moved immediately to the definition section of the electronic home detention law in order to undermine this new provision in 100B. Point three, the court, the Smith court emphasized one aspect of the definition of home detention. It found in the electronic home detention law, but it ignored the fact that that same definition also says, it defines home detention as the confinement of a person convicted or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority. Well, if it applies to a person's charge with an offense, that has to mean someone before their sentence, someone who is out on bond and confined to home detention. It couldn't possibly mean anything else. And the state has not identified any other circumstance under which someone could be confined to their home by court order prior to conviction and sentencing other than being on bond. There is no other provision in the law that would allow that to happen. Point four, the Smith court interpreted that terms and conditions language in an unnecessarily restrictive manner. What it basically says, well, the supervising authority under this definition doesn't include courts. And since the courts are the one that order and establish the home detention in a bond order, they're the supervising authority. Therefore, they fall outside of this definition of home detention, which is why I called it convoluted. I think it is. Even taking that argument on its face, I think the Smith court is still wrong because that's overly restrictive. Certainly, the court is the initial authority that establishes the home detention when it issues the bond order. But then it assigns, basically as an agent of the court, some other agency to supervise the home detention. In our case, it was the probation department. They visited Ms. Vandenberg that decided when she would have to take a drug test, what constitutes approved travel for legal or medical purposes. So, yes, the court in the first instance is a supervising authority. But afterwards, it then assigns that supervising authority to someone else. So I think the Smith court was actually wrong, even on the terms of its own argument. Fifth, the Smith court ignored the fact that this broader understanding of terms and conditions is actually supported by another provision of the electronic home detention law, which is Section 5884, which states that the supervising authority may promulgate rules that prescribe reasonable guidelines under which the home detention program shall operate. But it recognizes in that statute, in that section, that many of these have to be established by the court in the first instance. For example, approval to go to a job, approval to go out to look for work, undergoing medical or other treatment programs, or a drug rehabilitation program. All of these things are established by the court in the first instance, and then the authority to supervise is delegated to this other authority. The very electronic home detention law that the Smith court relied upon sets this recognizing that there are two levels of supervising authority. The sixth reason why the Smith court was wrong is that in another section of the electronic home detention law, it again recognizes that a person in an electronic home detention program includes persons out on bond pending trial or appeal. This is in Section 5883 of the electronic home detention law, where it's actually stated in the negative. It says that there are certain people that can't go in an electronic home detention program, but one of the exceptions is that persons out on bond pending trial. So here again, the very law which the Smith court relied, or the other section of the code upon which the Smith court relied, recognizes that home detention includes someone who's out on bond pending trial. The seventh reason why the Smith court was wrong is basically it violates the rule of statutory construction that you cannot read a law to create, to consign it to a nullity. And that's basically what it does. Because by excluding home detention ordered by the court as a condition of bond from Section 100B, the Smith court basically rendered this provision meaningless because in every other instance in which a defendant would be in home detention, he or she would have to be serving a sentence and would not be entitled to credit to be deducted from the duration of the sentence. Again, it's kind of a variation of my earlier argument, but it comes back to the fact that the only way you can be on home detention before trial, before conviction or sentence, is when you're out on bond. And then finally, the eighth reason why I believe the Smith court was wrong, I'll address that during the bond. Thank you. Thank you, counsel. Counsel? Thank you. May it please the court? Counsel? A wise appellate court justice once told me, don't reinvent the wheel and never stand between the appellate court and lunch. I have the wheel here with me and I'm not going to stand between you and lunch. This is straightforward. What defendant is asking this court to do today is reinvent the wheel. That is, for the first time in Illinois jurisprudence, find and hold that a defendant is entitled to credit against a sentence for a time which the defendant concedes that she was not in custody. Section 5-4.5-100B. The title of this section is Calculation of Terms of Imprisonment. Subsection B. Credit. Time in custody. Same charge. Except when prohibited by subsection D, the trial court shall give credit to the defendant for time spent in home detention on the same sentencing terms as incarceration as provided in section 5-8-3. Fair enough. The problem here is the defendant is asking this court to utilize the plain language to find in her favor. Fair enough. Except the plain language doesn't apply to her case. The plain language here says home detention. The defendant in this case was on non-electronic home confinement as a condition of bond. Again, this goes back to my initial point, which is, if this court were to do what the defendant is asking this court to do, it would be the first court in this state to ever give a defendant credit for time served while not in custody. I'm not even sure how this court would define that. If you look at the entire context of section 5-4.5-100, it gives you a concept for what the intent of the legislature was in this case. Let me ask you a question, counsel. Yes, Your Honor. Assume a defendant is on pretrial home detention. What scenario can you give me that it's not a part of a bond? Is there ever any way that that person would be on home detention, but not as a part of a condition of bond? They could be, Your Honor. How would that be? I'm sorry. How would that be? Because they could be on bond, but also in custody. And these are the examples that I attempted to outline in the brief, and counsel sort of attacks on reply, and I think sort of misses the point. You can be on bond on a certain charge and still be in custody. Let's say, for example, there's overcrowding, and so they have to use electronic home confinement to keep someone who would otherwise be incarcerated, maybe the governor decides to let them out early by executive order, puts them on home confinement. They're clearly in custody under the Electronic Home Confinement Act. During that time, they commit another crime, or they had committed another crime while in prison. They're in custody, but for these purposes, would be on bond for that other charge, potentially. So it's an unlikely scenario, but clearly, and this is where I think the Smith and Stolberg Court, but in particular the Smith Court's rationale is helpful, because that's an intriguing question, but the other, if I would have had a reply to the reply brief, my response to that would have been, that's an intriguing question in the case in which we have home detention. We don't have home detention here, although there are scenarios in which a defendant could be in custody while on bond. But again, one of the things that I was shocked by in this case in reviewing the record when I got the brief and then reviewed the record individually was the fact that nowhere does defendant ever mention in the brief at oral argument today or in the reply brief the provision from page 25 of the record, which says that they're put on bond in consideration of being released from custody. So the idea here is that the defendant goes in and says, yes, let me out so that I can go get medical treatment where necessary. I can consult with my lawyer. Classic bond, you're released from custody. But here are the provisions that the court is going to impose against you to ensure that you come back, right? In this case, they were fairly restricted. That doesn't render the defendant in custody for these purposes, and certainly under 5-4.5-100. Does that answer your question, Your Honor, at least to the extent? Well, what about the curtailment of liberty? It's still a curtailment of liberty. Absolutely, Your Honor. And, you know, that's always a concern. And I think that's in part what the court, what the legislature is always trying to balance here. But any time that anyone is released on bond, there's a certain curtailment of liberty. The fact that you have to put money up to be released, in my judgment, in my libertarian mind, says that's a curtailment of liberty. This is just a very, a quite restrictive curtailment of liberty that doesn't rise to the level of home detention for purposes of the plain language of the statute. But even if it did, this person, this particular defendant was not in custody for those purposes. Because under that scenario, if we just judged it by restricting liberty, Your Honor, what we would be left with is any bond. You would get credit for any time out on bond in any case. Because I would argue, in fact, that any restrictions on bond, say that part of bond you had to come in and engage in a drug test. The fact that you have to produce a bond to begin with would be a restriction on liberty. And I don't believe that subsection B of this section requires, or it's the legislature's intent under that subsection that defendants get credit for that time. As I said, Smith does a good job of outlining this. In the state's brief, we sort of mirror the argument related to what was outlined in Smith with some additions. And then we go through in the brief and sort of attack each of defendant's statutory claims in order. That's outlined in the brief and I think is pretty straightforward. But again, the one thing that I wanted to emphasize without belaboring the point was that if this court were to hold that a defendant, based on this simple change from may to shall in the statute, rendered a defendant's bond the same as custody for purposes of sentencing credit, this would be the first court in Illinois to do so. The last thing that I want to point to, as I was getting to before the question, was the sort of penumbra of language in section 4.5-100. It's all focused on custody. Custody's a requirement of everything. And one of the things that I find compelling is the last sentence of subsection B. And that states, I'll refer to the wheel again, the trial court may give credit to the defendant for the number of days spent confined for psychiatric or substance abuse treatment prior to judgment. Oh, okay. How? If the court finds that the detention or confinement was custodial. Again, this is what this subsection and the rest of this statute is all about. It's all about custody. When you look at the cases that go about determining whether someone gets credit for pretrial custody, all of those cases that argue about, well, was someone confined or were they on home confinement, the reason the court is analyzing it in that way is to determine what? Whether they're in custody. That's the question. Here, defendant concedes specifically on page four of his reply brief, his client was not in custody. I'm not surprised by that because she signed a document, a bond, that specifically said, you're releasing me from custody. Again, the state's two primary arguments are, one, the plain language does not support this. She was on home, not electronic home confinement as a condition of bond, quite restricted condition of bond, but nevertheless, not home detention. Second, that she was not in custody, no custody, no credit. Any other questions from your honor? I don't believe so. Thank you, counsel. Counsel? Counsel, could you distinguish on the bond? Most bonds, you're not allowed to leave the state of Illinois. Without permission, right. And I would guess, some of you possibly, and I don't know, do they do bonds you don't leave a certain county? That certainly could be stated as a condition of bond. Right. You can have all kinds of conditions of bond. But you don't leave the, whatever your address is? Is that how it's in your, I don't know. Right, yes. It is a condition, right. It was, in this case, a condition of bond. And certainly, it's not unusual for home detention to be a condition of bond as an alternative to spending time in jail. This person was released on bond, but the conditions of the bond are blank, blank, blank, and blank. Right. Contrary to what the state is arguing here, we're not asking anyone to reinvent a wheel. The legislature has already given us a new wheel. We're talking about interpreting what that means. Counsel states that, well, if we rule this way, this would be the first court in the state to give credit for home detention. We don't know that that's true. I imagine there's any number of circuit courts looking at the plain language of this statute that have said, well, we have to give credit for home detention. So, I'm not sure why that dramatic statement was submitted to the court here. In any event, what we are asking the court to do is, yes, to challenge the wrongly decided decision in Smith and follow the cardinal rules of statutory construction to give effect to the intent of the legislature. What I think, respectfully, counsel is missing here is that with this change in the amendment, you don't have to be in custody to get credit for home detention. And as a matter of fact, the very argument that he cited where he read from the following sentence in subsection 100B where it says the trial court may give credit for time spent confined for psychiatric or substance abuse treatment if the court finds that the detention or confinement was custodial, well, that added condition is not attached to the sentence that we're concerned with, the one that gives credit to the defendant for time spent in home detention on the same terms as incarceration. There's a rule of statutory construction. I'm sure you're all familiar with it. Inclusio unius, that's exclusio alterius. That added condition is added to the sentence about psychiatric or substance abuse treatment prior to judgment, but it is not added to the sentence about home detention. Therefore, what counsel has stated is actually strengthening our argument that the way to interpret this is that the sentence means what it says, that thou shalt receive credit for time spent in home detention. The parade of horribles is suggested by counsel that, well, if we add home detention to the things you get credit for, then maybe a defendant should get credit for time spent when you come in for a drug test or other things. No, the legislature did not say that. It does say it did add in 2012 time spent in home detention. It doesn't say there's nothing implied here that says, well, now all bets are off and you can get credit for anything that's inconvenient. It's specific to home detention. The final point I'd make here is that it's an absurd construction, and this was the eighth reason why the Smith Court was wrong. To read a provision in the statute requiring trial courts to give credit to defendants for time spent in pre-sentence home detention shall give credit as the operative phrase and then draw the conclusion that the definition section of another part of the code does not allow such credit. That is an absurd, contradictory construction, and it violates the canon of construction that the legislature did not intend to create absurd, inconvenient, or unjust results. Granting the legislature has probably not looked upon with great favor these days, this canon of construction, I think, still holds true, and we have to interpret it properly. Accordingly, your honors, we again ask the court to read the plain language of the statute and do what the Smith Court failed to do. Do not deviate from the plain language when it's unambiguous, and we do not have to resort to further racist statutory construction. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. There are no further cases to set an oral argument before the court. We are adjourned for the day. Thank you.